IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Newport News Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 4:21-cr-68 |
| | ) | |
| TREQUAN M. SMITH, | ) | |
| | ) | |
| Defendant. | ) | |

FILED
IN OPEN COURT

MAR - 8 2022

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

## STATEMENT OF FACTS

By signing below, the parties stipulate that the following facts are true and correct, and that had the matter gone to trial, the United States of America would have proven them beyond a reasonable doubt, by competent and admissible evidence.

1. TREQUAN M. SMITH, the defendant herein, lived in Hampton, Virginia, in the Eastern District of Virginia.

**Count 1 – Conspiracy to Commit Bank Fraud**

2. Beginning in or about April 2020 and continuing until his arrest in October 2021, SMITH knowingly and willfully joined together with other coconspirators to execute a scheme and artifice to defraud and obtain money, funds, assets, securities, and other property owned by and under the custody and control of financial institutions like Navy Federal Credit Union.

3. Navy Federal Credit Union is a financial institution, as defined in Title 18, United States Code, Section 20, because it is a credit union with accounts insured by the National Credit Union Share Insurance Fund.

4. The defendant and coconspirators obtained funds under the custody and control of Navy Federal Credit Union in a number of different ways, but most commonly, they

convinced account holders to withdraw and turnover funds to them under false pretenses.

5. The defendant was a leader of the conspiracy. He recruited and managed at least five coconspirators (E.B., S.S., M.A., W.H., S.S.). At the defendant's direction, the coconspirators helped him commit fraud. The defendant also identified and defrauded victims himself.

6. Most commonly, the scheme and artifice to defraud operated as follows:

   a. The defendant and coconspirators posed as employees of Navy Federal Credit Union and contacted account holders to obtain information necessary to access their accounts without their consent.

   b. The defendant and coconspirators targeted Sailors in the United States Navy on dating applications like Tinder by posing as females interested in a romantic relationship.

   c. The defendant and coconspirators used the accounts they previously accessed via phishing to transfer funds to the targeted Sailors. Unbeknownst to the Sailors, these were not legitimate transfers.

   d. The defendant and coconspirators asked the Sailors to withdraw the transferred funds – often under the guise of helping a relative in the Navy who was trying to send them money.

   e. The defendant and coconspirators met Sailors via the Internet and in person at various locations in the Eastern District of Virginia to obtain the fraud proceeds.

7. On or about April 15, 2021, the defendant and his coconspirators phished access to the Navy Federal Credit Union account of victim S.F. by posing as a bank employee alerting victim S.F. to a fraudulent purchase. The defendant and his coconspirators transferred $18,750.00 from the account of victim S.F. to victim F.R. to induce victim F.R. to withdraw these funds under false pretenses.

8. On or about April 15, 2021, the defendant and his coconspirators caused victim F.R. to withdraw and turnover approximately $9,500.00 in U.S. currency via a cash

T.S  [initials]

withdrawal at Rosie's Gaming Emporium in Hampton, Virginia.

9. On or about April 15, 2021, the defendant and his coconspirators caused victim F.R. to further withdraw approximately $3,000 in U.S. currency via four transactions at Swami Food Store located at ** Lincoln Street in Hampton, Virginia. On or about April 15, 2021, the defendant and his coconspirators caused victim F.R. to further withdraw eleven (11) money orders each $500 at Western Union located inside Food Lion store located at ** Kecoughtan Road in Hampton, Virginia.

10. On or about May 4, 2021, the defendant and his coconspirators phished access to the Navy Federal Credit Union account of victim L.W. by posing as a bank employee alerting victim L.W. to a fraudulent purchase. The defendant and his coconspirators transferred $7,500.00 from victim L.W. to victim H.W. to induce victim H.W. to withdraw and turnover these funds under false pretenses.

11. On or about May 4, 2021, the defendant and his coconspirators caused victim H.W. to withdraw and turnover approximately $7,000.00 in U.S. currency at an apartment complex located at **** Montpelier Place in Hampton, Virginia.

12. On or about May 5, 2021, the defendant and his coconspirators caused victim H.W. to further transfer approximately $4,300.00 to the defendant's Navy Federal Credit Union account by using victim H.W.'s phone to conduct a member-to-member transfer of funds.

13. On or about May 17, 2021, the defendant and his coconspirators phished access to the Navy Federal Credit Union account of victim J.R. by posing as a bank employee alerting victim J.R. to a fraudulent purchase. The defendant and his coconspirators transferred $23,000.00 to victim K.V. to induce victim K.V. to withdraw

and turnover the funds under false pretenses.

14. On or about May 14-17, 2021, the defendant and his coconspirators caused victim K.V. to withdraw and turnover approximately $30,000.00 in U.S. currency via multiple structured cash withdrawals at Rosie's Gaming Emporium in Hampton, Virginia.

### Count 10 – Aggravated Identity Theft

15. On or about April 15, 2021, the defendant and his coconspirators used a bank account number (last four digits 5736) belonging to victim S.F. to transfer money to the account of victim F.R. to induce victim F.R. to withdraw and turnover the funds.

16. The defendant and his coconspirators' use of a bank account number (last four digits 5736) belonging to victim S.F. was without lawful authority.

17. In so doing, the defendant and his coconspirators knowingly used a means of identification of victim S.F. - a bank account number (last four digits 5736).

18. Victim S.F. did not consent to or benefit from the defendant and his coconspirators use of his bank account number (last four digits 5736).

### Relevant Conduct

19. In addition to the fraud victims expressly named in the indictment, the defendant and his coconspirators defrauded many other similarly situated victims. The defendant stipulates and agrees that he and his coconspirators defrauded the following additional victims that sustained actual losses.

| Victim | Actual Loss |
| --- | --- |
| Victim K.H. | $13,575.00 |
| Victim K.K. | $13,000.00 |
| Victim I.H. | $5,900.00 |
| Victim S.P. | $1,000.00 |
| Victim J.N. | $16,500.00 |

| | |
|---|---|
| Victim C.W. | $10,000.00 |
| Victim M.N. | $10,500.00 |
| Victim A.N. | $24,000.00 |
| Victim F.W. | $20,000.00 |
| Victim P.J. | $10,000.00 |
| Victim T.H. | $4,900.00 |
| Victim V.L. | $17,000.00 |
| Victim G.W. | $18,300.00 |
| Victim J.C. | $5,000.00 |
| Victim M.L. | $3,000.00 |
| Victim M.S. | $15,000.00 |
| Victim J.H. | $4,400.00 |
| Victim J.C. | $5,000.00 |
| Victim C.S. | $17,900.00 |
| Victim Z.H. | $4,016.00 |
| Victim I.F. | $4,000.00 |
| Victim M.R. | $91,000.00 |

20. The foregoing victims of the fraud scheme are almost all junior members of the United States Navy and of limited financial means. They suffered substantial hardship from the defendant and his coconspirators' scheme and artifice to defraud.

21. The defendant understands and acknowledges that the United States is still actively identifying new victims and losses. The number of victims and losses at sentencing may be higher.

## Obstruction of Justice

22. As part of the federal government's investigation of the defendant and his coconspirators' fraud conspiracy, the United States served COCONSPIRATOR 1 with a target letter, which indicated that COCONSPIRATOR 1 was the target of a federal criminal investigation involving violations of federal law, including conspiracy to commit bank fraud

5

T.S

and bank fraud.

23. The target letter expressly warned that the government was "preparing a case to present to the Grand Jury" and that "destruction, alteration, or withholding of any record, document or other object required to be produced before the Grand Jury constitutes a serious violation of federal law, including, but not limited to, obstruction of justice."

24. Despite the warning not to destroy relevant evidence, the defendant disposed of more than a dozen telephones used to commit fraud in the wake of COCONSPIRATOR 1 being served with a target letter.

25. On or about July 20, 2021, COCONSPIRATOR 1 indicated an interest in proactively cooperating against the defendant and others in the government's criminal investigation. On or about July 29, 2021, COCONSPIRATOR 1 was interviewed by law enforcement at the U.S. Attorney's Office in Newport News, Virginia.

26. The defendant learned of COCONSPIRATOR 1's cooperation. The government contends that while COCONSPIRATOR 1 was debriefing with law enforcement, the defendant tracked COCONSPIRATOR 1's vehicle to the vicinity of *** Lakefront Commons in Newport News, Virginia. The defendant determined this was the U.S. Attorney's Office and surmised that COCONSPIRATOR 1 was cooperating as part of the government's criminal investigation. The defendant maintains that COCONSPIRATOR 1 told him of her cooperation over Facetime.

27. On or about the early morning hours of July 30, 2021, the defendant confronted COCONSPIRATOR 1. The confrontation escalated into a violent altercation while COCONSPIRATOR 1 was in the passenger seat of the defendant's vehicle. The defendant slammed on the brakes, punched COCONSPIRATOR 1 in the head, slammed COCONSPIRATOR 1's head into the passenger window, partially pulled

COCONSPIRATOR's hair weave out, and choked COCONSPIRATOR 1 with both hands. The defendant maintains that physical altercation between himself and COCONSPIRATOR 1 on or about July 30, 2021, was about who should possess the car keys to a vehicle they shared at the time.

28. On or about August 1, 2021, the defendant posed as an invented law enforcement officer named "Robert Peach" and contacted COCONSPIRATOR 1 using the assigned cellular telephone number (830) ***-6269. The defendant told COCONSPIRATOR 1 that he needed to "meet up with the US attorney and you" in order to "take a urine test to prove your pregnant and a drug test." He further represented that if you "cooperate and be honest you will be on home arrest with probation."

29. The defendant then asked COCONSPIRATOR 1 to confirm the names of the other individuals COCONSPIRATOR 1 had implicated in the bank fraud conspiracy. Believing the defendant to be a member of the investigative team, COCONSPIRATOR 1 provided the defendant with this sensitive information, which revealed confidential aspects about the scope of the government's pending criminal investigation.

* * *

30. The defendant stipulates and agrees that he committed the acts described herein unlawfully, knowingly, and willfully, and without legal justification or excuse with the specific intent to do that which the law forbids, and not by mistake, accident or any other reason. The defendant further acknowledges that the foregoing statement of facts does not describe all of his conduct relating to the offenses charged in this case, nor does it identify all of the persons with whom he may have engaged in illegal activities.

Respectfully Submitted,

Jessica D. Aber
United States Attorney

By: _____
D. Mack Coleman
Assistant United States Attorney

After consulting with my attorney, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States could prove these facts beyond a reasonable doubt.

_____
TREQUAN M. SMITH
Defendant

I am counsel for TREQUAN M. SMITH. I have carefully reviewed the above Statement of Facts with her. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Rodolfo Cejas, II
Defense Counsel

8